WILLIAM RADEN *et al.*, plaintiffs in error, CALEB THOMPKINS, defendant in error.

When, on the trial of an action of ejectment for the recovery of a tract of land, the main point in controversy was whether the bond for the title under which the defendant claimed was a genuine bond, or a spurious or forged paper title, and the evidence upon that point being conflicting, the jury found a verdict for the plaintiff, there being no error alleged as to the charge of the Court in submitting that question to the jury:

*Held,* That a motion for a new trial, on the ground that the verdict was strongly and decidedly against the weight of evidence, and without evidence to support it, and contrary to law and the charge of the Court, was properly overruled by the Court below, there being sufficient evidence in the record to sustain the verdict, of which the jury were the proper judges, and not the Court.

Ejectment. New trial. Before Judge GREEN. Pike Superior Court. October Term, 1870.

In July, 1850, Doe brought ejectment for certain land in said county upon the demises of Edmond Blalock, Jonathan Harkness and Caleb Thompkins against Roe, casual ejector, and William Raden, tenant in possession. The pleas were the general issue and the Statute of Limitations. In April, 1857, there was a verdict for defendant. Plaintiffs moved for a new trial, and in April, 1859, a new trial was granted, upon the ground that the verdict was not authorized by the evidence. At October Term, 1860, there was a new trial. Bloodworth being interested in the land, was made a defendant at April Term, 1867, and then plaintiff had a verdict for the premises. A new trial was granted because of error in the charge of the Court. At October Term, 1869, the cause was again tried. The plaintiff read in evidence a grant of the land from the State to Edmond Blalock, dated the 26th of May, 1823, unrecorded; a deed from Blalock to Johnathan Harkness, dated the 26th of March, 1823; a deed from Harkness to Caleb Thompkins, dated the 27th of March, 1823; showed that Raden was in possession of the premises when the suit was begun, introduced evidence as to *mesne* profits and improvements made by the tenant, and closed. The defendant, after accounting for its loss, read a copy of a bond, dated the 24th of December, 1822, recorded in April, 1867, by which Edmond Blalock bound himself in the sum of $200 00, to William Blalock, to make a title to said land, without stating when it was to be made, or why. It was tested by William Sanders and Laird W. Harris, Justice of the Peace. A witness testified that this was a copy

of the original which was lost in the mail, when attached to a set of interrogatories. Another testified that the original was once in Green's possession and said it looked like an original paper, and that he did not remember whether it had blue lines or not.

Another witness testified that, while he did not know whether the said copy was the copy of a paper shown him years before by Bloodworth, yet he knew that Bloodworth professed to have some interest in this land and showed him *a* bond for titles, witnessed by said Laird W. Harris, Justice of the Peace, and that the signature of Harris, Justice of the Peace, was his genuine signature, witness knowing it well. But he did not remember whether the bond shown to him by Bloodworth was on blue-ruled paper or not, nor whether blue-ruled paper was in use in December, 1822, nor when it was first used, nor did he remember whether it was on a single leaf or a sheet of paper.

William Blalock testified that he bought the land from his cousin, Edmond Blalock, for $50 00, paid it in cash and took a bond for titles because the grant was not then issued, and that this bond was taken at Stanfordville, Putnam county, and witnessed by William Sanders and Laird W. Harris; that in 1846, he sold the land to James Gardner for $200 00 and turned over Edmond's bond to Gardner, but he did not remember whether it was written on ruled paper. They then read in evidence a deed from William Blalock to said Gardner made the 4th of November, 1846, and recorded in 1854, and a deed from said Gardner to said Bloodworth, dated the 3d of August, 1850, and recorded in October, 1867. There was evidence *pro. and con.* as to the genuineness of the deed from Edmond Blalock. It was shown that in 1822, Edmond Blalock gave in said land and paid taxes on it, and did not give it in afterwards.

The main fight was over said last bond. One witness testified that he saw Laird Harris, J. P., sign as a witness, such a bond as the copy, and it was shown that Harris was com-

missioned a Justice of the Peace in Putnam county, on the 15th of October, 1822.

Hartford Green, Esq., said that the paper which was called the original of the bond was before the jury; first saw it on a former trial, it was then in Court, and witness got Mr. Dismuke to copy it; this is the copy, the paper looked like it was too new as he recollects it, which first excited his suspicions as to the genuineness; he examined it; as well as he recollects it was white paper, with faint blue ruled lines; don't recollect to have seen any paper like it at the time of its date.

Thomas Richards, examined by interrogatories, said, I have no knowledge or recollection of ruled paper being sold unbound previous to the year eighteen hundred and twenty-seven; at that time I sold some foolscap and letter paper, which I sold by the quire, in this city, all kinds of paper was then unruled, never knew of any being in market otherwise until some few years afterwards, when it gradually got into general use in the United States; I have been engaged in the business of bookseller, stationer and book-binder in this city, since the year 1823; at that time I ruled paper with blue and red lines for blank books with a machine. This machine had been used a few years previous by some other person or persons, but to a very limited extent; at that time there was another ruling machine in use by Col. Williams, of Savannah, but not to my knowledge used for any other purpose than ruling paper with blue and red lines for blank books; the machine had not been known in the United States but a few years prior to that time—previous to which nothing was ruled save books, which had date lines, and lines for dollars and cents, which being all done with a single pen, and necessarily tedious, books were ruled with red lines only; neither books nor paper was ruled with blue lines until the ruling machine owned by Col. Williams and myself got into use, and I never heard or knew of paper ruled with blue lines being sold by the quire or ream, either

Raden *vs.* Thompkins.

here or any other place, until a few years after I had done so in this city.

The Court charged the jury, among other things, that if William C. Blalock bought and paid for the land, and took a bond for titles from Edmond Blalock, in 1822, and before Jonathan Harkness purchased the land, this constituted a good title in William C. Blalock on the instant the grant was issued, and they should find for the defendant, unless the deed to Jonathan Harkness was a *bona fide* deed from Edmond Blalock, and the bond to William C. Blalock was a forgery, in which event they should find for the plaintiff. If the bond to William C. Blalock and the deed to Jonathan Harkness are both genuine papers, then the oldest title must prevail, unless the deed to Harkness was duly recorded in twelve months, in which event plaintiff is entitled to recover. Plaintiff must recover on the strength of his own title, and not on the weakness of the defendant's, for it is immaterial what the character of defendant's title is; he being in possession, cannot be disturbed by any one unless he has a good title.

The jury returned a verdict finding for the plaintiff without *mesne* profits, with costs of suit, and defendant moved for a new trial, upon the following grounds, viz:

1. Because the verdict is contrary to law and equity.

2. Because the verdict is strongly and decidedly against the weight of evidence, and without evidence to support it, and against the charge of the Court.

The new trial was refused and error is assigned on said grounds.

PEEPLES & STEWART, E. G. CABANISS, D. N. MORTON, for plaintiff in error said, a bond for titles with the purchase-money paid was title: 3d Kelly, 5; 10th Ga. R., 190; 12th, 464; 24th, 150; 26th, 177; 22d, 112; 25th, 648; 35th, 63. After the draw and before the grant equitable title is in drawer, and the legal title in the State for drawer's use, and

this equitable title is transferable: 22d Ga. R., 112 ; 23d, 383; 24th, 150 ; 26th, 177 ; 29th, 1; 27th, 418.   The bond being older than the deed, and neither being recorded in twelve months from date, the oldest takes : Prince's Dig., 158, 160, 162 ; Cobb's Dig., 175 ; 33d Ga. R., 231.

A. M. SPEER, E. W. BECK, L. T. DOYAL for defendant.

WARNER, J.

There was no error in the Court below in overruling the motion for a new trial in this case.   The evidence as to the validity of the bond was *conflicting,* and the jury were the exclusive judges as to the credibility of the witnesses and as to the weight of their evidence.

Let the judgment of the Court below be affirmed.